Good morning. Please the court. My name is Blake Hall, and I represent Deputy Titlin in this case. As the court is well aware, this is a case that involves the issue of whether or not Officer Titlin violated any due process rights. Let me ask you one issue that concerns me. What's the focus of your appeal? Qualified immunity, your honor. Within qualified immunity, what's the heart of your argument? Well, in this case, we have a situation where Officer Titlin had no contact with the plaintiff in any fashion. Well, no, let me ask you this. Let me be more direct. I guess my question wasn't helpful. Are you raising a legal challenge? What I'm raising is the fact that under the United States Supreme Court decisions, there are only under qualified immunity that are only two exceptions under which an individual would not qualify for the qualified immunity. And in this case, those two exceptions have not been met. Well, you're not arguing that on it. You're not challenging the district court judge's determination that there were issues of fact that had to be decided. I am, in fact, making a challenge to that because the issue of qualified immunity is not an issue of fact. It's an issue of law. In the first instance, it needs to be resolved by the district court. The whole purpose for qualified immunity is to assist and not require. Well, sometimes the district courts can deny qualified immunity on the grounds that there is such an important issue of fact. They just can't decide whether or not there's whether or not the officer is entitled to qualified immunity. If you read the district court's decision, it appears that in some respects he made that kind of assessment. On the other hand, it also looks like he said there is a constitutional right at stake here. My question to you, it's important. My question to you is just what is it that you're challenging here? Your Honor, I do not believe that the district court, in fact, identified any question of fact, in this case, with regard to the issue of qualified immunity. In fact, the court does not appoint to any instance where there is a decision by the Ninth Circuit where you have an officer who has no contact with the plaintiff at all, and then have the court say, well, there's a question of fact as to whether or not this individual is entitled to qualified immunity. In this particular case, if the officer had read every single decision out of the Ninth Circuit prior to the day in question, there would not have been any clearly enunciated doctrine, constitutional doctrine, which would have clearly established that they were. That is dependent on a factual question that the district court said existed. And that factual question is the question whether Officer Titland knew that Correa was a sex offender and he was taking him. Because we do have a case that's very close on point to that. And if the evidence, as the district court said, established knowledge of the sex offender and that he was taking this person, dropping them off at a place where potential victims were, then that might constitute deliberate indifference in the district court's words. So what we're getting at is we have a serious – are you familiar with the case Johnson v. Jones? Yes. We have a serious question about whether jurisdiction exists in this case. Because if there are factual questions and the issue before us is just one of evidentiary sufficiency, we don't have jurisdiction. You need to go back. Someone needs to find the facts that establish what happened so we can see if there is a violation of a constitutional right and whether in those facts the principle should have been evident to a reasonable officer in Officer Titland's place. With regard to this particular case, I do not believe there are any undisputed facts. Well, I know you may not believe it, but I'm looking at a district court opinion that says it several times. Accordingly, there are genuine issues of material fact on whether Officer Titland violated plaintiff's TV rights under the due process clause. I'm quoting the district court. I agree that you are quoting the district court, and then the district court fails to enumerate what any of those alleged facts might be. Well, we have another case. We have another opinion. I don't know if you're familiar with that. Meropolis? Are you familiar with the Meropolis decision? It's recent. In that case, we said, all right, if it's not clear whether the district court actually was saying there's genuine issues of material fact or whether it denied it as a legal question, we don't have jurisdiction. So we took that even one step further and we admonished the district courts or suggested that the district courts in the future make it clear so we can better resolve these sorts of questions. And unfortunately, in this case, the district court did not enumerate what any of the alleged disputed facts might be. And in Meropolis, we would have to dismiss it for lack of jurisdiction. Let me ask you this. I'm sorry. I didn't mean to. Yeah, go ahead. So let's just pass over that for a moment. And let's assume that we take all the facts in the light most favorable to the non-moving party, to the plaintiff here, and that would be that Officer Titland knew that the juvenile was a sex offender. Why wouldn't there be a – and that he knew that there were young children, young girls at this residence. Why wouldn't that give rise to a constitutional violation? Certainly, if one changes the facts sufficiently, you might be able to get to that point. But in this case, the undisputed facts are, first of all, Officer Titland did not take this child – did not take Mr. Coria to the Parsons' home. Number two. He made the – he arranged for it to happen. He allowed for the city officer who had jurisdiction to take the child there. And that was after the probation officer. He called the probation officer. That's correct. And after the probation officer made a specific finding that it was an appropriate place for the officer to take the child. And so the probation officer made that determination. And certainly the officer should have the right to rely upon the decision of the probation officer to allow that child to be taken to this home. Additionally, Mrs. Parsons, the home where this child was – where Mr. Coria was taken, she testified that to her knowledge, the plaintiff in this case had never been to her home before. Now, if the owner of the home does not – is not aware that this child has ever been to her home before, how is it that the officer is supposed to be able to anticipate that a child that has never been to a home is going to go to this home and then encounter a situation that we're dealing with here? Isn't there some information that there were other children at the home as well? Mrs. Parsons had children of her own who resided in the home, but they're not plaintiffs in this case, Your Honor. And in fact, it's interesting that in this particular case, the plaintiff met Mr. Coria not at the home, but at a skate park some several blocks away. And that she approached Mr. Coria and that she advanced a relationship with him, that she called him at Mrs. Parsons' home some 25 to 30 times a day to advance this relationship. None of this was known, of course, to Mr. Titland, who was under the impression from the probation officer that Mr. Coria was to be delivered to this home to stay there one night. And that he was not to have any further, nor was he required to have any further follow-up with Mr. Coria, but rather quite to the contrary, he was just diffusing a domestic relationship issue, a domestic dispute that had occurred at the Coria home, deliver the child to this location, which was approved by the probation officer, to stay one night, and that the probation officer then, pursuant to her duties, would continue to proceed forward in any fashion. Let me ask you, when the plaintiff testified at her deposition, did she testify that she had been at the house before? No, she did not. What did she testify to? She testified that the reason she went to the house that day was to use the telephone and that in the past she had always gone to a gas station to use the telephone. And when she asked, had you been at the house before? To my recollection, the answer to that is correct, that she was asking that she had not been at that home before. I thought that she said she'd had some kind of a relationship with the son of Mrs. Parsons prior, and that she'd then been in the home several times. Well, my recollection, Your Honor, is different, in that it is that she did have a relationship with the family, that she had been in the home. I do not recall that testimony. But what I would say is that, irrespective of whether she'd ever been in the home or not, how is it that Officer Titlin is supposed to know whether or not this person had ever been in that home before on the night in question when he is told by the probation officer that he should deliver the child to that location? Mrs. Parsons did have a younger daughter, right? She was about 11 or something like that? Correct. And the daughter was residing in the home? Correct. And Mrs. Parsons specifically allowed for Mr. Correa to come to the home and to stay at the home. This minor child was not a victim in any fashion. Was Mrs. Parsons ever informed that? Nor was it a violation of the probation, of the terms of Mr. Correa's probation to be in the home with these children. Was Mrs. Parsons ever informed that Correa had a prior conviction for a sex offense? That is an issue of fact that is unresolved. But taking the plaintiff's version, because that's the only way that one could win on qualified immunity, as I understand, taking the plaintiff's versions of the fact, inferring it to the plaintiff's particular version to the best, that she was never told? That is the plaintiff's position, yes. And on summary judgment, that's where we'd have to go, correct? If you assume that, even though you have no contact with the actual plaintiff, and all Ninth Circuit court cases prior to this would indicate you have to have some contact, then you're- we have to assume all of the facts as the plaintiff would set them out. Yes, Your Honor. All right, thank you. Thank you. You've gone well over your time. Thank you very much, counsel. May it please the Court, my name is Jason Wood, appearing for the appellee, T.D. in this case. First, I'd like to address the jurisdiction issue. There are factual disputes. Frankly, I'm not sure that they're particularly relevant factual disputes, but they seem to be relevant to the appellant. In my reading of the cases that Judge Wardlaw has mentioned, indicates that if the appeal is based upon or relied upon on factual issues, issues in dispute, then that deprives the court of jurisdiction on the- Now, as I read the blueprint, he doesn't say, well, the district court was incorrect in light of the evidence in making the statement that there was disputed issues of fact. He doesn't say that at all in here. Right. He just basically takes the facts and says, well, there was, you know, the young lady was, you know, not- he didn't have direct-the officer didn't have direct contact with the young lady. It happened later. The probation officer authorized the stay that night. This event happened five days later, and under our case law, there's not sufficient contact. Well, I think that's probably true under the first brief. In the blue brief? Yeah, in the blue brief. Well, that's really all I really care about. Okay. Well, there is some. That's the brief. He's got to say it or he doesn't say it at all. Well, one of the things he does in that first brief is challenge-he does challenge that-and argues that Titlin didn't act with deliberate indifference because he couldn't have anticipated that T.D. would become infatuated with Walt, that she would then do these things, and that she was the one that then sought him out by leaving the skate park and walking a block to the Parsons' house. Isn't that just an application of the law as to the facts as you allege them? I mean, that's what we have to do in every case. My worry is that we have set out the facts to the best of your ability as the plaintiff sees them, and then we have to apply the law to those facts. If he's going to dispute the facts, we're going to send it back. We don't have any jurisdiction. Is there any statement of fact which is peculiarly important to you, as you've alleged it, which would either go to what you're talking about on this issue or go to the violation, that you do not feel he has appropriately set out in the blue brief? Yes. Because that's the question. Yes. Counsel states that it was T.D. that sought out and is actually the one that was responsible for her own danger by associating with this young man, 13. And as part of that argument, he offers the fact that T.D. walked to the house of the Parsons, which is only a block away, in order to not use the phone, which is T.D.'s testimony, that that was the reason, and it was not to see Walt DeCoria, the assailant. She did it because she needed to use the phone, like she often does when she's at the skate park until late in the evening. What's the evidence on how many times? I mean, is the evidence in dispute on how often T.D. was at the home? Well, here today, I hear from Mr. Hall that he didn't think that she'd ever been there before. That's another point that is, I think, critical to his argument, or at least he relies to this argument to a great extent on this appeal. Is the evidence in dispute on that or not? No, I don't believe it is. What's your version of it? My version is, which is the version that I think, as Judge Smith indicated, is the one that needs to take into account, is that T.D. had been there at least twice. Because she was some kind of a boyfriend-girlfriend relationship with a young man, Parsons. Correct. Mother may not have known. Mother may not have known, but she was there. Whether she did or not, I think that's in dispute. That part's in dispute, but she actually had... It isn't disputed. She said she didn't know. But it is in dispute that she was there. And your facts are, she was there. She was there. She was there on page 46 of the excerpts of record, and also, I believe, page 50 of the excerpts of record. She testifies in her deposition that she had been there on those two occasions, previous to this incident. What is your best case to suggest that we ought to move this to the point where the officer knows not of this contact, the officer knows not, the officer knows that this is a sex offender, calls the probation officer to see if he can put that person there. Probation officer says yes. And what's your best case that that covers the violation? Okay. With deliberate indifference, what's your best case? Well, first of all, I need to correct. Here's yet another factual dispute that's being raised by the appellant. The fact of the matter is, in the probation officer's deposition, she didn't testify that she gave permission. All she testified to was, Officer Tittman called me, told me that he was going to remove Walt Correa, the sex offender, and place him in the Parsons' home where these kids were living. So then the facts would be they called, at least, the probation officer, and the probation officer didn't say don't put him there. Correct. What's your best case? Well, I think the best case, the most on-point case, is the one that I brought to the Court's attention a few weeks ago, which is a district court decision out of Arizona, a federal district court case. That's not a very good case. Okay. Then that's not a good case. Then I think the best case probably is if there is an assumption. I mean, I guess the question is where do you want to go with this? Under the Ninth Circuit, there has never been any requirement that there be any prior contact with the victim. But under the Ninth Circuit cases, and we've had quite a few of these this week, it's usually with the police putting the person in the danger and putting them out there, and there they are, and then the police get in the problem. In this case, the officer doesn't have any contact with the client, no contact with the person. The officer didn't put the person there. The officer didn't let the person there. The officer just put the person who might have been a danger to that person in a situation where she might have gone. Well, I would direct the Court's attention then back to the landmark Wood v. Ostrander case. The situation there was reversed. We had a known victim but a completely random assailant. Now, why would in the one case we require contact with the other person that we don't know, and in the other we do? And I don't find any legal requirement that imposes such a thing. All that this Court required in Wood v. Ostrander was that it was foreseeable that by releasing this, by basically stranding a young woman on the roadside in a dangerous area, that there was a danger that she would be randomly attacked by a passing motorist or a passing pedestrian. That was the danger, and I see it as being very much similar to this situation. I believe it was the Second Circuit in the Pena case. I like their analysis in which they stated that the difference between these two special relationships and the state-created danger exceptions are, in a special relationship you focus upon the relationship between the state and the victim. In the state-created danger cases, you focus on the relationship between the state and the assailant. And that's the situation we have here. As they put it... So where do we make it if we draw the line where you do? Where can the officer put the particular individual? Couldn't have put it back at home because she would have had some idea about that. Where would he have had her go? Only to jail? The kid? Well, he'd actually requested a couple of weeks before that to be placed in jail himself, and that's in the record. The kid? The kid. Coria, correct. So jail's the only alternative? I don't know. I'm not the PO, but there is testimony and evidence in the record where it was Titland's own testimony where he said, well, look, if I had known that there were kids in there, I may have made a different decision, or may not have, but at least we would go back to the drawing board and figure out what to do with this kid. So there's some causation there. I mean, at least he would have reconsidered. They could have detained him for a period of time. They could have detained him. He's an adult. He's 18 years old. The other alternative his PO gave him when they had been discussing a couple of weeks before this incident, the other alternative to go to jail was PO says, Walt, you're going to have to go move in by yourself somewhere, get an apartment. The worry that I have is the worry that you prompted again with your answer to my question. If I'd been the PO, that was your answer. And I guess my worry is here, you want me to extend this precedent on a situation where the police called the PO, the PO did not object, giving you every benefit of the doubt, and there still the police have 1983 liability. Well, in the affirmative act there, if all he had done at that point is just say, you know, I wash my hands of it, the kid takes from that that I guess it's okay for me to leave, and he wanders off and then rapes somebody, then there's no affirmative act that would provide a basis for this kind of liability. His affirmative act in this situation is knowing of the sexual history of this young man, knowing he's on probation, that he's a danger to these kids, knowing that he's not supposed to be around children. In fact, just a few weeks prior to this, another police officer in this small town of Rigby that Judge Smith knows called up to the PO and says, he's hanging out at the junior highs to talk to these little girls coming out of junior high, and he needs to stop. So they know all this stuff. We can infer that Officer Titlin did for the reasons that have already been discussed, plus I think one thing that hasn't been pointed out is he admitted in his deposition, and I can get the site for you, he admitted in his deposition that prior to this rape, he had been aware, even though he wasn't personally involved in arresting Coria for the incident, he had been involved in, or actually that he was aware of and knew about his inappropriate relationships with girls. And so he had this information, and yet he takes the child, and it's his call. He's the one making the decision. That's the fact that has to be construed in my client's favor. In the record, he says, I made the decision, and I caused Officer Hammond to take this child molester and drop him off at the doorstep of a house where there are minors, and not bothering to tell them that there's this danger. But the fact there are minors there, they're not the plaintiffs. That's why we have to be worried. That's true. And ultimately, Your Honors, I think that's what this, if the court accepts jurisdiction, then it has to construe all these facts in my client's favor. And when we do that, this case really does boil down to, is the Ninth Circuit Court going to adopt a new requirement that it never has before, that there has to be prior contact with the victim in order to state a Section 1983 claim like this? And I think the answer to that, to me, is pretty clear. That is, there hasn't been a single case identified by the appellant imposing such a requirement. And, in fact, the Third Circuit, in the Morse case, addressed it, because in the past they had required. That's the one circuit I could find. And then they rejected it. The problem, that's why I asked you the question. The problem I have with the argument is, I've never seen the case where the police have been responsible for a third party that they didn't have any contact with. I mean, the fact is that the people who are generally suing are the ones, the police, not the party directly enabling the problem, not the third party. They're the ones directly receiving the contact of the police. And I couldn't find the case. I cited, there are cases outside of this circuit. And, of course, the qualified immunity, the case law says, if there's no case that satisfies the court that's on point, you can go outside the circuit. Cases outside the circuit are the Pena case and the Reed case. The Pena case involved the police. Counsel, you're way over, so we can, I think we can read the Pena case and the Reed case. Thank you very much. So thank you very much. And DeCoria v. Tightland and the County of Jefferson will be submitted.
judges: Wardlaw, Paez, Smith N. R.